# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**MARCUS WILLIAMS**                                                   **PLAINTIFF**

**V.**                                           **CAUSE NO. 3:16-cv-838-CWR-FKB**

**ILLINOIS CENTRAL RAILROAD**                                        **DEFENDANT**
**COMPANY**

## ORDER

Before the Court is Defendant Illinois Central Railroad Company's Motion for Summary Judgment. The Motion is fully briefed and ready for adjudication.[1]

### I.        Factual and Procedural History

Marcus Williams is a unionized locomotive engineer who has worked for Illinois Central Railroad Company (IC) since 1998.[2] As a unionized employee, Williams is subject to the "CN US-2-15 Attendance Guidelines for Unionized Employees." The Guidelines categorize absences as excused or unexcused. For excused absences, an engineer of Williams' seniority is entitled annually to four weeks of paid vacation, 11 paid personal leave days (PLDs), 12 weeks of family medical leave (FMLA) for serious medical conditions, bereavement leave, and extended medical leave for medical absences lasting five days or more. Excused absences require advance approval.

The Guidelines define an unexcused absence as any absence other than (1) approved absence(s) for family or medical leave pursuant to FMLA or similar state leave laws, (2) approved medical leaves of absence, and (3) any absence or leave as long as proper approval has

---

[1] The Defendant has filed a Motion for Leave to File Excess Pages. Docket No. 62. The Motion is granted.

[2] From 1998 through his termination in 2015, Williams worked as a trainman, conductor, then locomotive engineer. On January 18, 2017, Williams was reinstated as an engineer.

been granted. The policy mandates that an employee be disciplined for unexcused absences if, during any 12-week period, he meets the following thresholds:

a. More than two occurrences of any duration;
b. More than three total work days missed; or
c. More than one occurrence that is on a holiday, immediately before a holiday, or immediately after a holiday, rest day, personal leave day, vacation day, or FMLA day.

In 2014, Williams had repeated attendance violations for exceeding the Guidelines' threshold of unexcused absences. In accordance with IC's progressive disciplinary policy, Williams received (1) a letter of caution for a violation occurring on March 7, 2014; (2) a five-day suspension for a violation occurring on August 28, 2014; and (3) a 15-day actual suspension and 30-day deferred suspicion for a violation occurring on December 18, 2014.

In 2015, all of these prior violations were still active on his record because, per the Guidelines, Williams had not completed six months without any attendance violations. If Williams violated the Guidelines a fourth time without completing the six-month window, the next disciplinary action was dismissal.

On the evening of June 12, 2015, Williams was assigned to work a yard-switching job in Jackson. As he was driving to work, he experienced multiple symptoms of a heart attack. He "had bad headaches and [felt] a little jittery," he recalled later. Docket No. 54-1 at 3.

Soon after he began his shift, at approximately 8:00 p.m., Williams boarded his locomotive and felt worse. He was light-headed and had chest pains. Williams first told his conductor that he was not feeling well, and then called the yardmaster and said he needed to go to the hospital. Two IC officials arrived, assisted Williams into an IC truck, and drove him to the emergency room at the University of Mississippi Medical Center.

At UMMC, the emergency room doctors conducted a complete medical workup and concluded that Williams' symptoms were "likely anxiety/stress related." Docket No. 59-4 at 1. More than six hours later, UMMC released Williams in the early morning hours of June 13, 2015. He was not prescribed any medication. But his medical records included instructions to follow up with his primary care doctor for evaluation of a preexisting pulmonary node noted during a CT scan. Williams was given a typed note that read,

> To Whom It May Concern:
>
> Marcus Williams was seen and treated in our emergency department on 6/12/2105. He may return to work/school on 6/15/2015.
>
> If you have any questions or concerns, please don't hesitate to call.

Docket No. 54-5 at 2. The letter was on the UMMC letterhead but was unsigned and did not reference the treating doctors.

Later that evening, Williams called IC's Attendance Management Center (AMC) to report that he was sick and would not work his shift that evening. The next day—Sunday, June 14— was a "regular off day" but he noted that he had a "doctor's excuse to be off until Monday." Docket No. 59-2 at 13. The AMC employee taking his call told Williams that the "absence would be considered when determining compliance with the attendance guidelines." *Id*. at 14.

IC held the June 13 absence against Williams. On June 17, 2015, AMC emailed Williams' supervisors to inform them that Williams had exceeded the threshold of unexcused absences during the 12-week period ending June 13, 2015. Specifically, Williams had more than two unexcused absences within the 12-week period and more than one absence that was on a holiday or immediately before or after a holiday, rest day, PLD, vacation day, or FMLA day. The email further stated that this was Williams' fourth attendance violation.

That same day, Williams was issued a Notice of Investigation regarding his June 13, 2015 absence. Following a formal investigation hearing on June 24, 2015, William Noland, an IC superintendent, determined that Williams had violated the Guidelines. Based on Williams' three prior attendance violations, Noland decided that dismissal from employment was appropriate. On July 2, 2015, Noland wrote Williams to notify him that he was dismissed, effective that day.

Williams appealed his termination to the Public Law Board (PLB), a tribunal that resolves disputes governed by the Railway Labor Act. On December 9, 2016, the PLB found that IC met its burden of proving Williams guilty of violating the Guidelines. Nevertheless, the PLB found that "circumstances in this particular case . . . mitigate[d] against permanent dismissal" and reinstated Williams without awarding back pay. Docket No. 54-6 at 3.

On December 3, 2015, Williams filed a formal complaint with the Occupational Safety and Health Administration (OSHA), asserting a claim against IC for violating the Federal Railway Safety Act (FRSA), 49 U.S.C. § 20109 *et seq*. When OSHA did not issue a final decision within 210 days, Williams commenced this action. 29 C.F.R. § 1982.114.

Williams claims that IC violated two anti-retaliation provisions of the FRSA: § 20109(a)(4), which protects an employee who notifies an employer of a work-related injury or illness, and § 20109(c)(2), which protects an employee who follows the orders or treatment plan of a physician. [3] IC now seeks summary judgment on both claims.

## II.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[3] Williams originally brought three causes of action. On June 15, 2017, the Court dismissed Williams' 49 U.S.C. § 20109(b) claim that his self-reported illness amounted to a "hazardous safety or security condition." *See Williams v. Ill. Cent. R.R. Co.*, No. 3:16-CV-838-CWR-FKB, 2017 WL 2602996, at *3 (S.D. Miss. June 15, 2017).

Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the portions of the record that support it. *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.,* 783 F.3d 527, 536 (5th Cir. 2015). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

When considering a summary judgment motion, the court *"must view all facts and evidence in the light most favorable to the non-moving party."* *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013) (citation omitted) (emphasis added). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted).

## III. Discussion

Congress enacted the FRSA in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The statute provides a number of protected activities from which an employee may not be disciplined. As is relevant here, FRSA protects an employee who notifies an employer of a work-related illness or injury, § 20109(a)(4), or who follows the orders or treatment plan of a doctor, § 20109(c)(2).[4]

To prevail in a FRSA retaliation claim, an employee must show by a preponderance of the evidence that (a) he engaged in a protected activity; (b) the employer knew that he engaged in a protected activity; (c) he suffered an unfavorable personnel action; and (d) the protected

---

[4] The Fifth Circuit has not interpreted either provision.

activity was a contributing factor in the adverse action. *Allen v. Admin. Review Bd.*, 514 F.3d

468, 475-76 (5th Cir. 2008).[5]

If the employee satisfies these requirements, the employer may avoid liability by

demonstrating, "by clear and convincing evidence, that the employer would have taken the same

unfavorable personnel action in the absence of that behavior.' 49 U.S.C. § 42121(b)(2)(B)(ii).

### A.    Section 20109(a)(4)

Again, § 20109(a)(4) prohibits a railroad carrier from discriminating against an employee

who notifies or attempts to notify the carrier "of a work-related personal injury or work-related

illness of an employee." *Id.* § 20109(a)(4). IC concedes that Williams suffered an unfavorable

personnel action but challenges the other three elements of Williams' prima facie case.

First, IC argues that Williams did not experience a "work-related illness" because work

conditions did not cause Williams' symptoms. IC points to Williams' medical records, which

document that Williams felt ill before he arrived at work and that he reported "excessive stress at

home." Docket No. 54-5 at 8. Dr. Sarah Sterling, one of the doctors that treated Williams,

testified that Williams' illness was "likely anxiety/stress related" but did not specify the cause of

Williams' stress. Docket No. 59-4 at 1.

IC seeks a bright-line rule that persons who experience a heart attack at work do not

qualify for protections of the FRSA until an expert testifies that the heart attack was caused by

work conditions. The Court is unwilling to endorse that interpretation of subsection (a)(4). The

cases cited by the Defendant are easily distinguishable from the instant case. *See Fields v. Se.*

*Penn. Transp. Auth.*, Nos. 14-2491, 14-4493, 2015 WL 4610876, at *4 (E.D. Pa. July 31, 2015)

---

[5] The FRSA incorporates the procedures of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (AIR-21), which contains whistleblower protections for employees in the aviation industry. *See* 49 U.S.C. § 20109(d)(2); 49 U.S.C. § 42121(b).

(finding that the plaintiff did not engage in a protected activity under subsection (a)(4) where he testified that he was not injured and did not report an injury to his employer); *Stokes v. Se. Pa. Transp. Auth.*, No. 15-2719, 2015 WL 5093114, at \*2 (E.D. Pa. Aug. 28, 2015) (ruling that the plaintiff's pregnancy was clearly not a work-related injury under subsection (a)(4)).

Second, IC asserts that Williams did not report a work-related illness. The Defendant contends that Williams admitted in his deposition that he failed to report an injury to IC and to complete a "Form 475," the internal form used to report an injury.

The FRSA, however, does not require employees to follow any particular reporting regime. *Smith-Bunge v. Wisconsin Central, Ltd*., 60 F. Supp. 3d 1034, 1040 (D. Minn. Oct. 8, 2014). The FRSA requires only that the employee act in good faith to inform his employer of a work-related injury. *Id*. Williams told his conductor, his yardmaster, and the two officials that transported him to the hospital that he was not feeling well and needed medical attention. They received Williams' report and acted upon it by taking him to the emergency room, and stayed with him during some portion of his evaluation until his wife arrived. Docket No. 59-5, at 12-13. Simply put, Williams reported his illness.

Still, the defense argues that Williams, in his communications with these officials, never specified that his symptoms were "work-related." The Court disagrees. It is unreasonable to expect that an employee, who is not a medical professional, to know the cause of his illness. Had Williams identified his symptoms as work-related, IC might then argue that Williams was not competent to make such a self-diagnosis.

Third, IC asserts that it did not have actual or constructive knowledge of a work-related illness because Williams never reported a work-related illness. IC says that it was never notified of such an illness because Williams' doctor's note did not specify the condition for which

Williams was treated. In response, Williams argues that his communications with IC officials on June 12, 2015 and his doctor's note provided IC sufficient notice. Again, Williams did not know if his illness was caused by work conditions.

Finally, IC argues that the illness was not a contributing factor in its decision to terminate Williams. A contributing factor is "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014). "To avoid summary judgment on this element, [the plaintiff] must submit evidence of intentional retaliation prompted by the employee engaging in the protected activity." *Gunderson v. BNSF Ry. Co.*, 850 F.3d 962, 969 (8th Cir. 2017) (quotation marks and citation omitted). In considering this element, the court "must take into account the evidence of the employer's nonretaliatory reasons."

IC contends that there is no relation between Williams' dismissal and his illness. IC argues that its June 24, 2015 investigation was based on Williams' June 13 absence, not his illness and request for medical help on June 12, 2015. The defense relies on *Kuduk*, in which the Eighth Circuit ruled that temporal proximity, without more, was insufficient to show that the protected activity was a contributing factor in the plaintiff's discharge. 768 F.3d at 792.

Williams' evidence indicates that his absence was not only a contributing factor, but the sole factor, for his dismissal. Williams' June 13 absence was caused by his June 12 injury, and IC then fired him based on this absence. A jury must be allowed to assess this evidence. Summary judgment should therefore be denied.

**B.      Section 20109(c)(2)**

IC also seeks summary judgment for alleged violations of § 20109(c)(2). Section 20109(c)(2) provides that a railroad carrier may not discipline an employee "for following orders

or a treatment plan of a treating physician." 49 U.S.C. § 20109(c)(2). Unlike subsection (c)(1), however, subsection (c)(2) does not explicitly limit its protections to treatment plans sustained "during the course of employment."

The Defendant urges the Court to follow the Third Circuit's interpretation of § 20109(c)(2) in *Port Authority Trans-Hudson Corp. v. Secretary, U.S. Dept. Of Labor*, 776 F.3d 157 (3d Cir. 2015). The *PATH* court concluded that "Congress intended the entirety of subsection 20109(c) to apply only when an employee sustains an injury during the course of employment." 776 F.3d at 160. It therefore rejected the plaintiff's argument that subjection (c)(2) prevented his employer from disciplining him for following a treatment plan for an off-duty injury. The Third Circuit does not clearly define "during the course of employment," but throughout the opinion it interprets the limitation to mean that the injury be obtained "on duty" or that it be "work related." *Id.* at 159, 162, 163, 165, 166, 168, 169.

For present purposes, the Court will adopt the Third Circuit's reasoning.[6] Relying on *PATH*, IC argues that Williams' injury was not obtained "during the course of employment." Because William's injury was not caused by work conditions, IC asserts that the injury does not fall within the scope of § 20109(c)(2). But the Defendant's reading of "during the course of employment" in *PATH* is wrong. The Third Circuit's holding is well-explained in Judge Africk's decision in *Jones v. Illinois Central Railroad Company*:

> The Third Circuit nowhere indicated that an 'on-duty injury' or 'work-related injury' meant anything more than that the injury must have occurred while the plaintiff was working. The injury in *PATH v. DOL* took place in the plaintiff's home while he was moving boxes. Accordingly, there was no need for the Third Circuit to decide whether an injury occurring at work must also be caused by work in order

---

[6] Other courts have also ruled that the "during the course of employment" limitation applies to subsection (c)(2). *See Green v. Grand Trunk Western R.R., Inc.*, No. 16-11587, 2017 WL 2805267, at *2 (E.D. Mich. June 29, 2017); *Murdock v. CSX Trans., Inc.*, No. 3:15-CV-01242, 2017 WL 1165995, at *4 (N.D. Ohio Mar. 29, 2017); *Miller v. BNSF Ry. Co.*, No. 14-2596-JAR-TJJ, 2016 WL 2866152, at *15 (D. Kan. May 17, 2016); *Goad v. BNSF Ry. Co.*, No. 15-00650-CV-W-HFS, 2016 WL 7131597, at *3 (W.D. Mo. Mar. 2, 2016).

to resolve the issue before it, as the plaintiff's injury in that case did not occur "during the course of employment" under either interpretation offered by the parties in this case.

No. 15-635, 2015 WL 5883030, at \*4 (E.D. La. Oct. 8, 2015) (citation omitted).[7] In this case, Williams' injury occurred while he was on duty. At a minimum, it is not conclusive that the injury occurred elsewhere. This is sufficient to bring Williams' injury within the scope of subsection (c)(2).

IC next contends that Williams cannot show his absence was pursuant to a physician's order or treatment plan. IC argues that the note merely recites that Williams was treated in the UMMC emergency room on June 12, 2015 and could return to work on June 15, 2015. IC suggests that this language does not constitute the meaning of "order," a mandatory instruction not to go to work. This argument is unpersuasive. Viewed in the light most favorable to Williams, the note is reasonably construed as an instruction that Williams not go back to work until June 15, 2015.

IC then emphasizes that the note was unsigned by a doctor. The Defendant cites *Bjornson v. Soo Line R.R. Co.*, which denied the plaintiff's subsection (c)(2) claim because he was following the treatment plan of a chiropractor, not a medical doctor. 237 F. Supp. 3d 889, 894 (D. Minn. Feb. 21, 2017). That is not the case here. Williams was treated by multiple medical doctors at UMMC's emergency room and given a doctor's note.

---

[7] Judge Africk considered the *PATH* holding in deciding a subsection (c)(1) claim. Since *PATH* involved a subsection (c)(2) claim, the *Jones* court determined that *PATH* did not address the question before it. Judge Africk ultimately held that the plaintiff's injury fell within the protections of § 20109(c)(1). The injury "was initially brought on as the result of the manifestation of a pre-existing condition during the course of [the plaintiff's] employment." *Jones*, 2015 WL 5883030, at \*7.

IC lastly argues that Williams has failed to establish that IC knew the illness was work-related and that it was a contributing factor in Williams' dismissal. These arguments should be resolved by a jury.

### C.    Affirmative Defense

Even if there is a genuine issue of material fact regarding Williams' claims, IC is entitled to summary judgment on its affirmative defense if it establishes "by clear and convincing evidence, that [it] would have taken the same unfavorable personnel action in the absence of that behavior." 49 U.S.C. § 42121(b)(2)(B)(ii). "[T]his affirmative defense is often not suitable for summary judgment determination" but is appropriate if the railroad satisfies its clear and convincing evidentiary burden. *Kuduk*, 786 F.3d at 793.

The Court would find IC's arguments more convincing if IC would have otherwise dismissed Williams for policy violations clearly not protected by the FRSA. For example, in *Koziara v. BSNS Railway Company*, the Seventh Circuit found that the employer would have still fired the plaintiff for stealing company property regardless of his work-related illness. 840 F.3d 873, 879 (7th Cir. 2016). Similarly, in *Kuduk*, the Eighth Circuit found that the employer would have discharged the plaintiff for violating a fouling-the-track rule even if the plaintiff had not engaged in protected activity. 768 F.3d at 793. But based on the evidence presented here, IC has not met its burden.

Courts have considered a number of factors in assessing a railroad's evidence, including: (1) whether the railroad has written policies addressing the alleged misconduct; (2) whether the railroad followed applicable investigatory and disciplinary procedures; (3) whether the railroad consistently enforces the policies and rules at issue; (4) whether the railroad monitors all employees for compliance with its policies; and (5) whether the policies were vague and used as

11

a pretext for discrimination. *See Dafoe v. BNSF Ry. Co.*, 164 F. Supp. 3d 1101, 1116-17 (D. Minn. 2016) (finding that the railroad would have fired the plaintiff in absence of his protected activity); *Kuduk*, 768 F.3d at 792-93.

The first two factors weigh in IC's favor. IC has detailed guidelines addressing unexcused absences and followed established procedures in conducting a formal investigation hearing. For the third and fourth factors, though, IC has failed to present any *specific* evidence of consistent enforcement and monitoring of the guidelines. It offers only the conclusory evidence that "AMC consistently applies these guidelines." *See* Affidavit of Rolando Jimenz, at Docket No. 54-2, at ¶ 3. Nothing in the record supports this statement. "Simply saying it is not enough, notwithstanding that . . . the assertion is in an affidavit." *Hubbard v. Yazoo City, Miss.*, No. 3:10-CV-308-CWR-LRA, 2011 WL 2692972, at *5 (S.D. Miss. July 11, 2011) (citations omitted).

Under the fifth factor, IC argues that it did not discriminate against Williams since the Guidelines assess discipline "without regard to the reason for the absence." But that is exactly the problem. Williams' evidence suggests that IC can use the Guidelines to evade FRSA requirements. For example, subsection (c)(2) requires an employer to consider whether an employee is following a doctor's orders for an on-duty injury before assessing discipline. If an employee is following doctor's orders to stay at home, as in this case, his railroad should not classify the absence as a violation of attendance guidelines.

Accordingly, IC has not submitted clear and convincing evidence that it would have still dismissed Williams. A jury should assess that evidence and make that finding.

IV.  **Conclusion**

The Court denies Defendant's Motion for Summary Judgment.

**SO ORDERED**, this the 5th day of February, 2018.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE